IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILFREDO CRUZ, et al.,[1] | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-25-44 |
| BAY POINT INSURANCE LLC, et al., | * | |
| Defendants. | * | |

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants Karl Smith and Bay Point Insurance LLC's ("Bay Point Insurance" or collectively, "Defendants") Motion to Dismiss (ECF No. 43) and Plaintiff Wilfredo Cruz's Motion for Entry of Partial Default (ECF No. 53). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion to Dismiss in part and deny it in part and will deny the Motion for Entry of Partial Default.

## I.   BACKGROUND

**A.   <u>Factual Background</u>[2]**

Plaintiff Wilfredo Cruz alleges that Defendants Bay Point Insurance, Karl Smith, and David Small committed insurance fraud. (Am. Cross-cl. ¶ 11, ECF No. 26). Smith and

---

[1] The Clerk will be directed to change the caption of this case from <u>M&T Equipment Finance Corporation v. Bay Point Insurance LLC et al.</u> to <u>Wilfredo Cruz, et al. v. Bay Point Insurance LLC, et al.</u> on the docket.

[2] Unless otherwise noted, the Court takes the following facts from the Amended Crossclaim (ECF No. 26) and accepts them as true. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Small are insurance brokers. (Id. ¶¶ 12–16). Smith organized Bay Point Insurance on August 17, 2015. (Id. ¶ 16). Bay Point Insurance hired Small to work as an insurance broker and producer. (Id. ¶ 19).

Cruz was an employee of Lucky Dog, LLC, which was organized on August 7, 1998. (Id. ¶¶ 26, 32). Cruz formed a trucking company to haul waste for Lucky Dog, LLC named W&DC General Contractor, LLC ("W&DC General Contractor") in Virginia on August 31, 2021. (Id. ¶¶ 33, 39). W&DC General Contractor, in turn, acquired a 2022 Westar tractor in February 2022 and a 2013 Kenilworth tractor in October 2023. (Id. ¶¶ 40–43). Bay Point Insurance brokered and produced W&DC General Contractor's purchase of a workers' compensation, commercial general liability, and motor cargo policy. (Id. ¶¶ 46–47).

On January 26, 2024, two of Cruz's tractors were involved in an incident in Baltimore, Maryland. (Id. ¶ 61). Cruz promptly reported the incident to Bay Point Insurance. (Id. ¶ 65). Cruz contacted Small to ensure that a claim arising from the incident was promptly filed with the physical damage insurance carrier, Trisura Specialty Insurance Company. (Id. ¶ 66). W&DC General Contractor arranged and paid out-of-pocket for a towing company to tow the tractors from the scene of the incident. (Id. ¶¶ 68, 71). W&DC General Contractor also paid out-of-pocket for the repairs of the trailers attached to the tractors. (Id. ¶ 72).

Cruz alleges that at the time Bay Point Insurance and Small brokered the insurance policy for his business, Bay Point Insurance and Small were not actually qualified to do business nor were they licensed to practice insurance in the Commonwealth of Virginia

and failed to disclose this to Cruz. (Id. ¶¶ 50, 52). Indeed, Cruz alleges that Bay Point Insurance and Small did not obtain their license to practice insurance as producers and brokers under Virginia law until March 12, 2024 and May 24, 2024 respectively—months after the incident. (Id. ¶¶ 73, 78).

W&DC General Contractor and Cruz reiterated their request that Bay Point Insurance provide copies of their insurance policies and handle the claim associated with the incident through counsel on March 22, 2024. (Id. ¶ 75). After failing to receive copies of the insurance policies or any payment of benefits, Cruz shut down W&DC General Contractor on November 18, 2024, and Lucky Dog LLC also wound down its business. (See id. ¶¶ 81, 83–84). Cruz alleges that he has sustained financial hardship, emotional distress, and pain and suffering as a consequence of Bay Point Insurance and Small's fraud. (Id. ¶ 86). Cruz alleges that W&DC General Contractor would have sought and obtained other customers and continued to do business if they had not been defrauded, and the tractors remain idle at the repair shop to this day. (Id. ¶¶ 87–88). Cruz reported these allegations through a complaint against Bay Point Insurance to the Maryland Insurance Administration, which then referred his complaint to the Virginia State Corporation Commission's Bureau of Insurance, which continues to investigate this matter. (Id. ¶¶ 89–91).

**B.  Procedural History**[2]

Cruz filed an Amended Crossclaim against Bay Point Insurance, David Small, and Karl Smith on September 3, 2025. (ECF No. 26). The seventeen-count Amended Crossclaim includes the following causes of action: Conspiracy to Commit Racketeering (Count 1); Violations of the Virginia Consumer Protection Act of 1977 (Count 2); Common Law Civil Conspiracy (Count 3); Common Law Civil Actual Fraud (Count 4); Common Law Civil Constructive Fraud (Count 5); Common Law Civil Fraud by Omission (Count 6); Common Law Conversion (Count 7); Common Law Tortious Interference (Count 8); Common Law Negligence (Count 9); Negligence Per Se (Count 10); Common Law Vicarious Liability (Count 11); Common Law Breach of Fiduciary Duty (Count 12); Common Law Breach of Contract (Count 13); Common Law Restitution – Unjust Enrichment (Count 14); Contractual Indemnification (Count 15); Equitable, Implied, and Tort Indemnification (Count 16); and Contribution (Count 17). (Am. Cross-cl. ¶¶ 92–171). Defendants filed a Motion to Dismiss on October 3, 2025. (ECF No. 43). Cruz filed an Opposition on October 17, 2023, (ECF No. 51), and Defendants filed a Reply on October 31, 2025, (ECF No. 57).

---

[2] Despite this case's lengthy procedural history, the Court only recounts what is necessary to resolve the instant Motions.

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs of Davidson Cnty.</u>, 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid

of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.      Analysis**

   **1.      Motion for Entry of Partial Default**

The Court will first address Cruz's Motion for Entry of Partial Default against Bay Point Insurance and Smith (ECF No. 53), which he asserts is proper because Defendants do not challenge Counts 7, 9, 10, 11, 14, 16, and 17 in their Motion to Dismiss. (Pl.'s Mot. Entry Partial Default ¶ 9, ECF No. 53). Defendants counter that its Motion to Dismiss forecloses such a result, (Defs.' Opp'n Pl.'s Mot. Entry Partial Default at 3–7, ECF No. 59), and the Court agrees.

Defendants' Motion to Dismiss (ECF No. 43) precludes the entry of default because under Federal Rule of Civil Procedure 55, entry of default and default judgment may be entered only "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed.R.Civ.P. 55(a); see also Jaffe v. Accredited Sur. and Cas. Co., Inc., 294 F.3d 584, 589 (4th Cir. 2002) (noting that filing motion to dismiss constitutes "defend[ing]" for the purposes of avoiding default judgment). This remains true even where a motion to dismiss does not address every count. See Dekom v. New York, No. 12-CV-1318(JS)(ARL), 2013 WL 3095010, at *5 (E.D.N.Y. June 18, 2013) ("That the motions to dismiss may not have addressed every single claim purportedly raised by Plaintiffs in their Amended Complaint is irrelevant. A party may file a motion to dismiss only certain claims—i.e., a partial motion to dismiss—and the filing of any motion under

6

Rule 12 postpones a defendant's time to answer until fourteen days after the motion is decided." (citing Fed.R.Civ.P. 12)), aff'd, 583 F.App'x 15 (2d Cir. 2014). As a result, the Court will deny Cruz's Motion for Entry of Partial Default (ECF No. 53).

### 2.    Motion to Dismiss[3]

### a.    Count 1: Conspiracy to Commit Racketeering

The Court will next turn to Defendants' Motion to Dismiss. Defendants first argue that Cruz fails to state a RICO Conspiracy claim under § 1962(c). (Defs.' Mem. L. Supp. Mot. Dismiss Pl.'s Am. Cross-cl. ["Mot."] at 3, ECF No. 43-1). The RICO statute prohibits the conduct of an "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO establishes criminal penalties and also "a private civil right of action to '[a]ny person injured in his business or property by reason of a violation of the RICO provisions.'" Hardwire, LLC v. Ebaugh, No. JKB-20-0304, 2021 WL 3809078, at *5 (D.Md. Aug. 26, 2021) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997)). "A civil RICO action 'is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'" Ekstrom v. Cong. Bank, No. ELH-20-1501, 2020 WL 6565251, at *16 (D.Md. Nov. 9, 2020) (quoting U.S. Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010)).

To properly plead a civil RICO claim, plaintiffs must allege "1) conduct [causing injury to business or property] 2) of an enterprise 3) through a pattern 4) of racketeering

---

[3] As a reminder, Defendants only move to dismiss Counts 1–3, 4–6, 8, 12, 13 and 15 (see generally Defs.' Mem. L. Supp. Mot. Dismiss Pl.'s Am. Cross-cl, ECF No. 43-1), so the Court only reaches these claims in its analysis of the Motion to Dismiss.

activity." Id. at *17 (alteration in original) (quoting Morley v. Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989)). A RICO conspiracy claim, on the other hand, "requires that the plaintiff allege and later prove that the defendants knew of the RICO violations of the enterprise and agreed to facilitate those activities." Chambers v. King Buick GMC, LLC, 43 F.Supp.3d 575, 607 (D.Md. 2014) (quoting Proctor v. Metro Money Corp., 645 F.Supp.2d 464, 483 (D.Md. 2009)). As various fraud claims are asserted as the predicate acts for this civil RICO violation, Rule 9(b)'s particularity requirement applies. Ekstrom, 2020 WL 6565251 at *19.

In evaluating the viability of a RICO claim, the United States Court of Appeals for the Fourth Circuit instructs courts to differentiate between "garden-variety fraud claims," which do not amount to a RICO violation, and "cases involving a more serious scope of activity." See Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). Courts have "limit[ed] [RICO's] severe penalties to offenders engaged in ongoing criminal activity, rather than isolated wrongdoers." Ekstrom, 2020 WL 6565251, at *17 (quoting Friedler v. Cole, No. CCB-04-1983, 2005 WL 465089, at *7 (D.Md. Feb. 28, 2005) (second alteration in original)). Indeed, RICO "is reserved for conduct whose scope and persistence pose a special threat to social well-being." Id. (quoting Biggs v. Eaglewood Mortg., LLC, 582 F.Supp.2d 707, 714 (D.Md. 2008), aff'd, 353 F.App'x 864 (4th Cir. 2009)). Thus, the Court "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).

Here, Cruz's RICO claim fails because he has not established that Defendants were engaged in an enterprise. An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff must establish three elements: "(1) an ongoing organization; (2) associates functioning as a continuing unit for a common purpose; and (3) the enterprise is an entity separate and apart from the pattern of activity in which it engages." Rojas v. Delta Airlines, Inc., 425 F.Supp.3d 524, 537 (D.Md. 2019). Significantly, "a RICO enterprise requires the existence of collaboration or agreement between the members of the enterprise." Id. Further, "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." Chambers, 43 F.Supp.3d at 607 (quoting Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990)).

Although Cruz alleges that Baypoint Insurance, Smith, and Small "intentionally conspired and agreed to conduct and participate, directly or indirectly, in RICO enterprise through a pattern of racketeering activity involving fraudulent representations regarding insurance services, policies, coverages, and benefits," he has not pleaded that they formed any type of agreement to engage in that conduct. (Am. Cross-cl. ¶ 93). At most, Cruz argues that Defendants generally "knew that their predicate acts, including common law fraud, statutory fraud, common law theft, statutory theft, and other unfair and deceptive trade practices, comprised a pattern [of] racketeering activity." (Id. ¶ 94). That is not enough—conclusory allegations regarding an agreement are insufficient to state a RICO claim. See

9

Rojas, 425 F.Supp.3d at 538 (finding that general allegation that a "collective decision was made" did not properly establish a RICO enterprise); SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 437 (4th Cir. 2015) (finding no agreement where plaintiffs alleged only that "a collective decision was made").

As Cruz has failed to provide "specific allegations as to how, when, or where" any agreement took place, he has not stated a RICO or RICO conspiracy claim. See Rojas, 425 F.Supp.3d at 538; Twombly, 550 U.S. at 555 (stating that courts must ignore conclusory allegations or formulaic recitations of the elements of a claim); Grant v. Shapiro & Burson, LLP, 871 F.Supp.2d 462, 473 (D.Md. 2012) (dismissing RICO complaint with "no factual averments" regarding agreement between defendants); Chambers, 43 F.Supp.3d at 607–08 (dismissing civil RICO conspiracy complaint where it contained conclusory statement that defendants "worked in combination with each other" to engage in fraud); Compass Mktg., Inc. v. Flywheel Digit., LLC, No. GLR-22-379, 2023 WL 2213687 at *10 (D.Md. Feb. 24, 2023), aff'd, No. 23-1324, 2024 WL 3292676 (4th Cir. July 3, 2024) (same). In other words, the Court agrees with Defendants that "Cruz offers naked assertions that Small, Smith, and Bay Point conspired, but does not identify who reached an agreement, when it occurred, nor what each Defendant allegedly knew." (Mot. at 8). As a result, the Court will grant Defendants' Motion as to Cruz's RICO claim.

b.    **Count 2: Virginia Consumer Protection Act**

Defendants next argue that Cruz fails to state a claim under the Virginia Consumer Protection Act ("VCPA") because the transactions at issue did not involve consumer transactions but rather concerned Cruz's business. (Mot. at 9–11). The VCPA defines a

10

"consumer transaction," as the "advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code Ann. § 59.1-198 (West 2025). Here, the Amended Crossclaim implicates an insurance fraud dispute involving tractors used in the course of Cruz's business, companies that rely on them, and insurance brokers. (See Am. Cross-cl. ¶¶ 11–91). Accordingly, the Court will grant Defendants' Motion as to Cruz's VCPA claim.

### c.    Count 3: Common Law Civil Conspiracy

Defendants next argue that Cruz fails to state a claim for civil conspiracy because there are no separate entities to support a conspiracy claim. (Mot. at 12–13). For the reasons set forth below, the Court agrees. Under Virginia law, to state a claim for common law conspiracy, "a plaintiff must show 1) an agreement between two or more persons; 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme." Skillstorm, Inc. v. Elec. Data Sys., LLC, 666 F.Supp.2d 610, 618 (E.D.Va. 2009) (quoting Flexible Benefits Council v. Feltman, No. 1:08CV371, 2008 WL 2465457, at *9 (E.D.Va. June 16, 2008)) (internal quotation marks omitted). "If a principal/agent or an employer/employee relationship exists between the parties, the parties are not separate entities." Rogers v. Deane, 992 F.Supp. 621, 633 (E.D.Va. 2014) (emphasis added). Here, because "an entity cannot conspire with itself," a conspiracy among any combination of Smith, Small, and Bay Point Insurance—in which Bay Point Insurance is owned by Smith and employs

11

Small, (Am. Cross-cl. ¶¶ 2–4), is legally untenable. Perk v. Vector Res. Grp., 485 S.E.2d 140, 144 (Va. 1997). Accordingly, the Court will grant Defendants' Motion as to Cruz's common law conspiracy claim.

### d.     Counts 4–6: Common Law Fraud

Defendants next argue that Cruz fails to state a claim for fraud because he fails to plead fraud with any particularity. (Mot. at 13–14). To state a claim for common law actual fraud, a plaintiff must show: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Prospect Dev. Co. v. Bershader, 515 S.E.2d 291, 297 (Va. 1999) (quoting Bryant v. Peckingpaugh 400 S.E.2d 201, 203 (Va. 1991)).

Here, Cruz sufficiently alleges that Defendants falsely represented that they would insure his tractors, that he relied on these policies, and has suffered damages as a result. (Am. Crossclaim ¶¶ 44–54, 71–73). Cruz asked for proof of the insurance policies but Defendants refused to provide any copies. (Id. ¶¶ 74–76). Additionally, Cruz includes specific dates upon which Defendants earned their license, months after the incident, despite allegedly entering earlier agreements to insure his property. (Id. ¶¶ 73, 78). While questions of intent and motivation may be explored at the discovery stage, for now, Cruz sufficiently alleges fraud and the Court will deny Defendants' Motion to Dismiss as to Cruz's common law fraud claims.

### e.    Count 8: Common Law Tortious Interference

Defendants next argue that Cruz fails to state a claim for Common Law Tortious Interference because this claim lacks a factual basis. (Mot. at 16–17). The necessary elements to establish a prima facie case [of tortious interference] are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the infereror; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 318 (Va. 2014) (quoting Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985)). Defendants only take issue with the third element, arguing that Cruz fails to "provide any detail or additional allegations to show that the requisite knowledge and intent existed." (Mot. at 16–17). Cruz is correct, however, that while a plaintiff must plead that the "interferor had knowledge of the business relationship and intended to disturb it," "malice is not [required]" to plead this claim. Chaves, 335 S.E.2d at 102–03.

Here, Cruz sufficiently alleges (1) the existence of "valid contractual relationships or business expectancies involving W&DC General Contractor, LLC, Mr. Cruz, Lucky Dog, LLC, and other actual or prospective clients of W&DC General Contractor and Mr. Cruz," (Am. Cross-cl. ¶ 120); (2) that Defendants had knowledge of the existence of such relationships (id. ¶¶ 49–54, 120); (3) that Defendants intentionally interfered with those relationships or expectancy of contractual relationships by selling Cruz and W&DC General Contractor an insurance policy despite not having a license to do so (id. ¶¶ 75–

13

78); and (4) that as a result, Cruz and W&DC General Contractor never received insurance coverage or benefits that would have enabled them to continue to do business (id. ¶¶ 79–84, 87–88, 120). Accordingly, the Court will deny Defendants' Motion to Dismiss as to the tortious interference claim.

### f.    Count 12 : Common Law Breach of Fiduciary Duty

Defendants next argue that Cruz fails to state a claim for breach of a fiduciary duty because he fails to allege the existence of a fiduciary duty in the first instance. (Mot. at 17). Specifically, Defendants argue that "Virginia law does not create a fiduciary duty in insurance agents, brokers, or brokerages to their clients/insureds." (Id.). Cruz counters that there is indeed a fiduciary relationship between an insured and a broker under Virginia law. (Pl.'s Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 22–23, ECF No. 51). The Court, at this stage of the litigation, agrees with Cruz and finds Cincinnati Ins. Co. v. Ruch, 940 F.Supp.2d 338 (E.D.Va. 2013) instructive. There, the court explained that "[o]nce an agency relationship between an insured and a broker is established, a fiduciary relationship generally arises as a matter of law. . . . [Defendant], as the broker . . . owed certain fiduciary duties common to all broker-client relationships." Id. at 347. Here too, Defendants plausibly owed a fiduciary duty in their role as brokers not to defraud Cruz or W&DC General Contractor as the insured. As a result, and because Defendants advance no other grounds for dismissal, the Court will deny Defendants' Motion to Dismiss as to the breach of fiduciary duty claim.

14

### g.    Counts 13 & 15: Breach of Contract & Indemnification

Defendants next argue that Cruz fails to state a claim for breach of contract and contract indemnification because while W&DC General Contractor was a party to the contracts at issue, Cruz was not. (Mot. at 18–19). Cruz counters that as the former owner and sole member of W&DC General Contractor, he is entitled to sue for breach of contract. (Opp'n at 23). In any event, Cruz has since moved to join W&DC General Contractor in this action (ECF No. 25), which this Court granted as unopposed (ECF No. 66). As a result, and because Defendants advance no other grounds for dismissal as to these claims, the Court will deny Defendants' Motion as to the breach of contract and indemnification claims.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 43) in part and deny it in part. The Court will direct Defendants to answer the remaining counts of Cruz's Amended Crossclaim in accordance with the Local Rules and Federal Rules of Civil Procedure. The Court will deny Cruz's Motion for Entry of Partial Default (ECF No. 53). A separate Order follows.

Entered this 10th day of June, 2026.

_____/s/_____

George L. Russell, III
Chief United States District Judge
